UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DANIEL REHKUGLER,

                                    Plaintiff,

v.                                                          5:16-CV-0024
                                                            (GTS/ATB)

AETNA LIFE INS. CO.,

                                    Defendant.
_____

APPEARANCES:                                        OF COUNSEL:

OFFICE OF JAMES D. HARTT                   JAMES D. HARTT, ESQ.
  Counsel for Plaintiff
70 Linden Oaks, 3rd Fl.
Rochester, NY 14625

EPSTEIN BECKER & GREEN, P.C.            KENNETH J. KELLY, ESQ.
  Counsel for Defendant                          LORI A. MEDLEY, ESQ.
250 Park Ave.
New York, NY 10177

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

Currently before the Court, in this action filed by Daniel Rehkugler ("Plaintiff") against

Aetna Life Insurance Company ("Defendant" or "Aetna"), pursuant to the Employee Retirement

Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*, are Plaintiff's motion for

judgment on the administrative record and Defendant's motion for summary judgment. (Dkt.

Nos. 24, 25.) For the reasons that follow, Plaintiff's motion is denied and Defendant's motion is

granted.

## I.     RELEVANT BACKGROUND

### A.     Plaintiff's Amended Complaint

Generally, in his Amended Complaint, Plaintiff alleges as follows.  Plaintiff is (and, at all relevant times, was) employed by Federal Express Ground System, Inc. ("FedEx") as a "maintenance technician."  (Dkt. No. 6 at ¶¶ 6, 9 [Plf.'s Am. Compl.].)  Plaintiff was covered under a long-term disability ("LTD") plan ("the LTD Plan"), which was administered and insured by Defendant.  (*Id.* at ¶ 14.)  On January 23, 2014, Plaintiff was "removed from work" due to disability, and, accordingly, he applied for benefits under the LTD Plan.  (*Id.* at ¶ 15.)  In so doing, Plaintiff provided Defendant with medical evidence establishing that he suffered from degenerative thoracolumbar scoliosis, foraminal stenosis, and central canal stenosis, and, as a result, that he was disabled within the meaning of the LTD Plan.  (*Id.* at ¶¶ 19, 21-25.)  Despite this evidence, however, Defendant denied his claim for LTD benefits "in bad faith."  (*Id.* at ¶ 26.)

Based upon the foregoing allegations, Plaintiff asserts a claim for the wrongful denial of benefits under the LTD Plan pursuant to 29 U.S.C. § 1132(a)(1)(B).  (*Id.* at ¶ 32.)  Moreover, Plaintiff requests an Order permanently enjoining Defendant "from denying payment of future recurring claims" pursuant to 29 U.S.C. § 1132(a)(1)(B) and (a)(3)(A).  (*Id.* at ¶ 34, Prayer for Relief at ¶ A.)[1]

---

[1]     The Court notes that, in his original Complaint, Plaintiff also asserted that Defendant improperly denied his claim for benefits for short term disability ("STD") benefits under its STD Plan.  (Dkt. No. 1 [Plf.'s Compl.].)  However, Plaintiff's Amended Complaint does not contain a claim related to Defendant's denial of STD benefits.

### B.     Undisputed Material Facts

As an initial matter, a few words are appropriate with respect to the manner in which the parties' motions were briefed.  Plaintiff's motion is denominated variously as one seeking "judgment on the law" (Dkt. No. 24 [Plf.'s Notice of Motion, Caption]), "judgment on the administrative record" (Dkt. No. 24 [Plf.'s Notice of Motion, Text]; Dkt. No. 24, Attach. 2 [Plf.'s Memo. of Law, Cover Page Caption]), and/or "JUDGMENT ON THE ERISA RECORD" (Dkt. No. 24, Attach. 1 [Proposed Order/Judgment]).  Plaintiff's motion papers also contain passing reference to Fed. R. Civ. P. 56, which governs motions for summary judgment.  (*See, e.g.,* Dkt. No. 24, Attach. 2 [noting that Plaintiff seeks "judgment pursuant to [Fed. R. Civ. P.] 7(b), 56, [and] ERISA § 502"].)  The Second Circuit has noted that a "'motion for judgment on the administrative record' . . . does not appear to be authorized in the Federal Rules of Civil Procedure." *Muller v. First Unum Life Ins. Co.*, 341 F.3d 119, 124 (2d Cir. 2003).[2]  Because "[m]any courts have either explicitly or implicitly treated such motions . . . as motions for summary judgment under Rule 56," the Court will treat Plaintiff's motion as one seeking summary judgment.  *Muller*, 351 F.3d at 124; *accord, e.g., Tulino v. Un. of Ohmaha Life Ins. Co.*, 15-CV-3731, 2017 WL 384068, at *6 (S.D.N.Y. Jan. 26, 2017); *Rao v. Life Ins. Co. of N. Am.*, 100 F. Supp. 3d 210, 219 (N.D.N.Y. 2015) (Hurd, J.).

Although Plaintiff did not file a separate statement of material facts ("Rule 7.1 Statement"), the Court construes Part II of his memorandum of law–which consists of purported

---

[2]     Additionally, the Court notes that, while Fed. R. Civ. P. 50 deals with granting (or denying) judgment as a matter of law in the context of a jury trial, "there is no right to a jury trial under ERISA[.]"  *Muller*, 341 F.3d at 124; *accord*, *O'Hara v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 642 F.3d 110, 116 (2d Cir. 2011) ("[T]here is no right to a jury trial in a suit brought to recover ERISA benefits[.]").

factual assertions set forth in numbered paragraphs with parenthetical record citations purportedly supporting those assertions–to be a Rule 7.1 Statement.  (Dkt. No. 24, Attach. 2, Part II.)  However, the Court notes that several of Plaintiff's purported factual assertions constitute improper legal arguments (*see, e.g.,* Dkt. No. 24, Attach. 2, ¶¶ 2, 3, 6, 9, 12, 19, 20, 23), are worded in a manner that misleadingly characterizes the record citation provided (*see, e.g., id.*, ¶¶ 7 [asserting that Plaintiff was "told by FedEx that he qualified for STD benefits under the plan, and began to collect STD benefits shortly after taking leave," but citing a letter apparently related to a different disability for which he claimed benefits several years prior to the disability at issue in this case], 15 [attributing medical diagnostic conclusions to "Aetna's own assigned Surgeon" and citing a report in which Dr. Martin Mendelssohn, M.D., a reviewing physician for Aetna, summarized the contents of Plaintiff's medical file]), or are broad assertions not supported by a *specific* citation to the record (*see, e.g., id.*, ¶ 3 [citing hundreds of pages of the administrative record for "(t)he nature of Plaintiff's disability[] and a history thereof"]).  Plaintiff is respectfully reminded that a statement of material facts must "set forth, in numbered graphs, each material *fact*," and must "set forth a *specific* citation to the record where the *fact* is established."  N.D.N.Y. L.R. 7.1(a)(3) (emphasis added).[3]

---

[3]        Moreover, in an affidavit filed in opposition to Defendant's motion for summary judgment, Plaintiff purports to "[a]ffirm" or "[d]eny" the facts asserted in Defendant's Rule 7.1 Statement.  (Dkt. No. 28, Attach. 1.)  The Court construes Plaintiff's affidavit to be a response to Defendant's Rule 7.1 Statement ("Rule 7.1 Response").  However, as Defendant notes in its reply memorandum of law, Plaintiff's Rule 7.1 Response does not comply with Local Rule 7.1(a)(3) because (1) it does not "mirror" Defendant's Rule 7.1 Statement by setting forth his responses in matching numbered paragraphs, and (2) it does not contain specific citations to the record where purported factual issues arise.  N.D.N.Y. L.R. 7.1(a)(3).  Despite these shortcomings, the Court has liberally considered Plaintiff's Rule 7.1 Response in conjunction with its review of Defendant's Rule 7.1 Statement and the administrative record.

With these considerations in mind, unless it otherwise notes, the Court draws the

following facts from one of the party's (or both parties') Rule 7.1 Statement.  Moreover, unless

otherwise noted, the following facts are either expressly admitted or inadequately denied by the

opposing party's response Rule 7.1 Response.  (Dkt. No. 24, Attach. 2, Part II [Plf.'s Rule 7.1

Statement]; Dkt. No. 29, Attach. 3 [Def.'s Rule 7.1 Response]; Dkt. No. 25, Attach. 4 [Def.'s

Rule 7.1 Statement]; Dkt. No. 28, Attach. 1 [Plf's Rule 7.1 Response].)  Where appropriate, the

Court also refers directly to the administrative record filed by the parties.  (Dkt. No. 21

[Administrative Record ("AR")].)[4]

### 1.     General Background

Defendant is the claims-paying administrator and claim fiduciary for FedEx's LTD Plan.

In February 2014 (the time at which he first sought disability benefits), Plaintiff worked for

FedEx as a Maintenance Technician Specialist I.  According to FedEx's job description for this

position, Plaintiff's working conditions included "moderate physical requirements" and lifting

"[u]p to 25 pounds" 33-66 percent of the time, "[u]p to 50 pounds" less than 33 percent of the

time, "[u]p to 100 pounds" less than 33% of the time, and "[o]ver 100 pounds" less than 33

percent of the time.  (AR 860.)[5]  As a Maintenance Technician Specialist I, Plaintiff performed

---

[4]      As discussed below, the appropriate standard of review in this case is whether
Defendant's denial of Plaintiff's claim for benefits was arbitrary and capricious.  "If the district
court engages in an arbitrary and capricious standard of review, the court's review is limited to
the administrative record."  *McCarthy-O'Keefe v. Local 295/851 IBT Employer Grp. Pension
Trust Fund*, 648 F. App'x 145, 146 (2d Cir. 2016) (summary order).

[5]      The job description for a Maintenance Technician Specialist I defines "[m]oderate
[p]hysical [r]equirements" as follows: "Regularly involves lifting, bending, or other physical
exertion–often exposed to one or more disagreeable environmental factors, such as heat, cold,
noise, dust, dirt, chemicals, etc., with one often to the point of being objectionable–inquiry may
require professional treatment–usually not result in significant loss of work time–some

"standard preventative maintenance procedures" on various machines and systems within the

FedEx facility.  (*Id*.)

### 2.     Plaintiff's Claim for STD Benefits and Defendant's Initial Denial

Plaintiff sought to take disability leave starting on January 23, 2014, due to lower back

pain, scoliosis, and spinal stenosis.  Plaintiff filed an claim for short term disability ("STD")

benefits (which was assigned claim number 9349447) and provided medical records showing

that he had a history of chronic lower back pain dating back to 2008.[6]  According to Plaintiff's

medical records from 2008 and 2009, x-ray and MRI examinations revealed that he had various

impingements, bulging disks, and extrusion, curvature of the spine, and foraminal stenosis.  (AR

812 [Progress Note, dated 1/30/2009].)[7]

Plaintiff's claim for STD benefits under FedEx's STD Plan was denied.  Defendant denied

Plaintiff's claim on the basis that (according to Defendant) the medical records and diagnostic

test results received, along with the results of a functional capacity evaluation ("FCE") (as

communicated to Defendant by Matthew Bowman, a physical therapist, because Plaintiff never

provided the FCE report to Defendant), did not support his claim that he was completely

---

precautions required, (i.e., protective clothing, safety glasses)."  (AR 864.)

[6]     As noted above, Plaintiff's Amended Complaint does not contain a claim for
recovery of STD benefits.  However, Defendant considered documentation related to his claim
for STD benefits when it evaluated his claim for LTD benefits.  This documentation is discussed
in greater detail below.

[7]     The same medical records reflect that, at the time, Plaintiff was in "no acute
distress," had normal range of motion for his lumbar spine for flexion, extension, and rotation,
had a normal straight leg raising test and normal strength in his lower extremities.  (AR 812
[Progress Note, dated 1/30/2009].)

disabled from performing the duties of his own occupation.[8]

    Plaintiff appealed the denial of his STD claim, asserting that he was unable to perform his job because of "back pain due to scoliosis, stenosis & osteoarthritis." (AR 790.)[9] By letter dated January 28, 2015, Defendant upheld its decision to deny Plaintiff's claim for STD benefits. In so doing, Defendant noted that, during a peer-to-peer consultation with Plaintiff's treatment provider, Dr. Harold Husovsky, M.D., "Dr. Husovky [*sic*] could not provide any evidence of any functional or neurological deficits." (AR 687.) However, Plaintiff was granted benefits pursuant to a New York State disability claim for the time period from January 30, 2014 to July 30, 2014.[10] Moreover, entries from Defendant's claims system reflect that Plaintiff was approved for

_____

[8]    The letter advising Plaintiff that his STD claim had been denied stated as follows:

> After review of the medical information received there was a lack of significant quantifiable physical examination findings, such as range of motion measurements in degrees, gait analysis, and detailed neurological examination to correlate with your subjective complaints to support a functional impairment. In addition, the diagnostic studies performed and commented on above revealed no significant interval change compared to previous imaging studies. The peer-to-peer telephonic conference with Mathew Bowman, physical therapist, indicated that you were capable of lifting 60-75 pounds occasionally and could safely work in a medium physical demand category eight hours a day. The results of the Functional Capacity Evaluation would be in compliance with your job description as a maintenance technician specialist I for Federal Express described as a medium to heavy physical demand category.

(AR 518-19.)

[9]    A separate letter appeal, sent by Plaintiff's counsel on the same date that Plaintiff completed his appeal form, contains the STD claim number (9349447) but references "LongTerm [*sic*] Disability Benefits." (AR 794.)

[10]    Plaintiff neither admits nor denies this fact, but states that he thought that the short-term disability benefits he was receiving were being paid by Aetna. (Dkt. No. 28, Attach.

Social Security Disability Insurance based on his back issues as of January 2014.  (*E.g.,* AR

197.)

### 3.    Relevant Language of the LTD Plan

Defendant is the claims-paying administrator of the LTD Plan.  Pursuant to the LTD

Plan, Defendant possesses discretionary authority as follows:

> The Claims Paying Administrator, shall, subject to the
> requirements of the Code and ERISA, be empowered to interpret
> the Plan's provisions in its sole and exclusive discretion in
> accordance with its terms with respect to all matters properly
> brought before it pursuant to this Section 5.3, including, but not
> limited to, matters relating to the eligibility of a claimant for
> benefits under the Plan.  The determination of the Claims Paying
> Administrator on review of an appeal shall be made in a fair and
> consistent manner in accordance with the Plan's terms and its
> decision shall be final, subject only to a determination by a court
> of competent jurisdiction that the Claims Paying Administrator's
> decision was arbitrary and capricious.

(AR 67-68.)  With respect to the burden of proof, the LTD Plan states as follows:

> The burden of proof for establishing a Disability is on the Covered
> Employee and the Covered Employee must produce sufficient
> proof to prove such Disability; at no time is it the Administrator's
> or Claims Paying Administrator's duty or responsibility to

---

1 [Plf.'s Affid.].)  Documents in the administrative record (specifically, claims notes in
Defendant's Central Note System) reflect that, although Plaintiff's claim for STD benefits
pursuant to Aetna's STD Plan were denied, he was awarded STD benefits through New York
State (which was assigned claim number 9349451).  (AR 198, 232, 399-40, 405.)  Any confusion
on Plaintiff's part appears justified because, on February 25, 2014 (the same date that Aetna sent
him the letter referenced in note 9, above), Aetna sent him a letter informing him that his
application for benefits under "the FedEx Ground self-funded Short-Term Disability group plan .
. . administered by Aetna" had been approved.  (AR 520.)  As reflected by its reference to claim
number 9349451, the approval letter concerned Plaintiff's benefits under New York State law;
and, as reflected by its reference to claim number 9349447, the denial letter bearing the same
date concerned Plaintiff's application for benefits under FedEx's STD Plan.  The administrative
record does not otherwise reflect that Plaintiff was awarded benefits pursuant to FedEx's STD
Plan.

> investigate a Covered Employee's claim or otherwise gather proof
> in support of such Covered Employee's claim for Disability
> Benefits.

(AR 61.)  With respect to what information may constitute "sufficient proof" the LTD Plan states

as follows:

> Such [sufficient] information may, as the Claims Paying
> Administrator shall determine, consist of a certification from the
> Covered Employee's attending Practitioner, in the form prescribed
> by the Claims Paying Administrator, information in the form of
> personal references, narrative reports, pathology reports, x-·rays
> and any other medical records or other information as may be
> required by the Claims Paying Administrator.

(AR 60.)

The LTD Plan defines "Disability" or "Disabled" as "either an Occupational Disability or

a Total Disability[.]"  (AR 37.)  To meet either of these definitions, a Covered Employee must

(1) be, "during the entire period of Disability, under the direct care and treatment of a

Practitioner," and (2) "substantiate[]" his or her Disability "by significant objective findings

which are defined as signs which are noted on a test or medical exam and which are considered

significant anatomical, physiological or psychological abnormalities which can be observed

apart from the individual's symptoms."  (AR 37-38.)

The LTD Plan defines "Occupational Disability" as follows:

> [T]he inability of a Covered Employee, because of a medically-
> determinable physical or functional impairment . . . to perform the
> essential functions of his regular occupation or of a reasonable
> employment option offered to him by the Employer and, as a
> result, he is unable to earn more than 80% of his pre-disability
> monthly income.

(AR 41.)  The LTD Plan defines "Total Disability" as follows:

> [T]he complete inability of a Covered Employee, because of a
> medically-determinable physical or functional impairment . . . to
> perform the essential functions of any gainful occupation for which
> he is qualified on the basis of his education, training, experience,
> or ability, and, as a result, the Covered Employee is unable to earn
> more than 60% of his pre-disability monthly income for employees
> who have chosen the Basic Plan Option or is unable to earn more
> than 70% of his pre-disability income for employees who have
> chosen the Premiere Plan Option.

(AR 42-43.)  With respect to the time at which a benefit commences, the LTD Plan states as

follows:

> The Disability Benefit shall commence to accrue on the day
> following the conclusion of all benefits payable to the Disabled
> Covered Employee pursuant to the FedEx Ground Package
> System, Inc. Short Term Disability Plan . . . on account of the
> same condition for which benefits are payable hereunder and shall
> be payable monthly during the continuation of Disability as
> provided herein.

(AR 47-48.)

### 4.      Plaintiff's Claim for LTD Benefits

Plaintiff filed a claim for benefits pursuant to the LTD Plan, which Defendant reviewed

while Plaintiff's appeal from the denial of his claim for STD benefits was under consideration.

On October 17, 2014, Defendant interviewed Plaintiff by telephone.  During the call, Plaintiff

stated that he was experiencing back pain that had been ongoing for six years, and that his

physician had advised him to limit himself in climbing ladders, and that he was unable to bend,

crawl, lift, stand, or sit.  Moreover, Plaintiff stated that no testing had been done in the previous

six months, and that his medical treatment plan at that time was to take medication and follow up

with his doctor every six months.

#### a.     Plaintiff's Medical Records

At the time Defendant was initially determining Plaintiff's LTD claim, it had to rely

on the information and medical records that had been submitted as part of his STD

claim because Plaintiff had not provided any updated or additional documents in support of his

LTD claim.  Among the documents constituting his STD claim file were three medical records

from Dr. Harold Husovsky, Plaintiff's family practitioner, and/or his medical practice, related to

the time period from October 11, 2013, through January 22, 2014.  (AR 728-29, 825-28, 829-

32.)  These records reflect (among other things) that Plaintiff previously underwent surgery on

his knee, left shoulder (in 2009), and right shoulder (in 2010).  (AR 826, 842.)  However, these

records do not discuss what (if any) functional impairments Plaintiff has as a result of his lower

back pain and related diagnoses.[11]

---

[11]     A medical record related to an appointment on October 11, 2013, reflects that Plaintiff was seen for lower back pain and related symptoms that "have been present for 5 years[.]"  (AR 825.)  The record reflects that Plaintiff reported lower back pain rated 8/10 in severity that was aggravated by bending, sitting, standing, and walking.  (*Id.*)  On examination, Plaintiff exhibited "mild tenderness" and "mild to moderate spasm" of the lumbosacral spine area, as well as "[p]ainful and reduced" range of motion.  (AR 828.)  The medical record does not quantify what Plaintiff's range of motion was.

     In a medical record dated October 31, 2013, Dr. Richard Tallarico reviewed recent imaging films that had been taken of Plaintiff's thoracolumbar spine and pelvis and compared them to files from 2009.  Dr. Tallarico noted that Plaintiff's scoliotic deformity with compensatory curve, as well as his degenerative disc disease, was unchanged from his 2009 films.  On examination, Plaintiff's motor strength in his lower extremities was five out of five, he had a negative straight-leg raise, and he exhibited a limited range of motion with forward flexion, hyperextension, and lateral bending.  (AR 728.)  The record reflects that Dr. Tallarico also requested an updated MRI and directed Plaintiff to "look into Social Security disability[.]"  (*Id.*)

     According to a medical record dated January 22, 2014, Plaintiff presented to Dr. Husovsky with complaints of back pain.  (AR 829.)  On examination, Plaintiff's lumbosacral spine area had "mild-moderate tenderness and mild spasm" and "[p]ainful and reduced" lumbosacral range of motion.  (AR 831.)  Plaintiff's straight-leg raise was positive at 20 degrees on bilateral and his deep tendon reflex, motor strength and sensation were all "normal."  (*Id.*)  Plaintiff was prescribed pain medication.  (AR 832.)

Dr. Husovsky also completed an Attending Physician Statement ("APS"), executed in January 2014, as well as two Attending Physician Recertification Statements ("APRS"), dated April 7, 2014, and June 26, 2014, respectively (AR 736, 800-01.)   In the APS, Dr. Husovsky stated that Plaintiff was disabled from work starting on January 23, 2014, and for an "indefinite" period, but did not provide any clinical information or objective findings related to a functional impairment.  (AR 736.)  In the APRSs, Dr. Husovsky stated that Plaintiff was experiencing "[c]hronic low back pain" that "prevent[ed] any type of labor" and had not improved.  (AR 800-01.)

Plaintiff underwent an MRI examination in 2013, and, in a medical report dated December 2, 2013, Dr. Barbara Henriquez, M.D., observed that the MRI reflected "[n]o significant interval changes" compared to the results of an MRI examination completed in October 2009.[12]  (AR 719-20.)  Similarly, x-ray examinations of Plaintiff's pelvis, thoracolumbar spine, and lumbar spine were completed in 2013 and compared with imaging taken in 2008 and 2009.  (AR 721-26.)  These comparisons reflected no significant interval changes since the earlier x-ray examinations, but the thoracolumbar spinal x-ray did reveal "extensive degenerative changes . . . throughout the thoracolumbar spine[.]"  (AR 721, 723, 725.)

### b.    Independent Peer Review of Dr. James Wallquist, M.D.

In February 2014 (in conjunction with Plaintiff's claim for STD benefits), Defendant retained Dr. James Wallquist, M.D., a board certified orthopedic surgeon, to perform an independent peer review of Plaintiff's medical records.  As part of his peer review, Dr. Wallquist

---

[12]     Plaintiff's 2009 MRI reflected, *inter alia*, a left convex curvature of the lumbar spine and numerous instances of disc bulge and mild to moderate canal and foraminal stenosis. (AR 719.)

12

conducted a peer-to-peer telephone conference with Dr. Husovsky on February 13, 2014.

During the conference, Dr. Husovsky advised Dr. Wallquist that Plaintiff completed an FCE in

January 2014, but that he (Dr. Husovsky) was "unable to provide the summary relative to

[Plaintiff's] level of functionality[.]"  (AR 715 [Physician Review Report of Dr. Wallquist,

2/19/2014].)  Dr. Husovsky recommended that Dr. Wallquist contact Mr. Bowman, the physical

therapist who performed the FCE.  (*Id.*)  With respect to "the issue of functional impairment and

disability," Dr. Husovsky stated that he "would defer that decision to the orthopedist or

physiatrist" to whom Dr. Husovsky had referred Plaintiff in January 2014.  (*Id.*)  However,

Defendant did not receive any orthopedic or physiatrist records for its review (and, as a result,

none were provided to Dr. Wallquist as part of his peer review).  Dr. Wallquist contacted the

office of Mr. Bowman, who advised Dr. Wallquist that, based on the results of the FCE, Plaintiff

"demonstrated the ability to lift 60-70 pounds occasionally without pain."  (AR 716.)  Moreover,

Mr. Bowman opined that Plaintiff "could safely engage in a medium physical demand category

for an eight hour day, lifting up to 25 to 50 pounds."  (*Id.*)[13]  Defendant (and, by extension, Dr.

Wallquist) did not receive a copy of the FCE report.[14]

---

[13]    (*Compare* Dkt. No. 25, Attach. 4, at ¶ 38 [Def.'s Rule 7.1 Statement, asserting above-stated fact and citing record evidence establishing it] *with* Dkt. No. 28, Attach. 1 [Plf.'s Rule 7.1 Response, "[d]eny[ing]" fact asserted because Plaintiff "[d]isagree[s] with Mr. Bowman's evaluation of [his] functional capacity," but failing to support denial with record citation or to otherwise elaborate on his disagreement with the fact asserted].)

[14]    (*Compare* Dkt. No. 25, Attach. 4, at ¶ 40 [Def.'s Rule 7.1 Statement, asserting above-stated fact and citing record evidence establishing it] *with* Dkt. No. 28, Attach. 1 [Plf.'s Rule 7.1 Response, "[d]eny[ing]" fact asserted because "[a]ll records requested by Aetna were sent multiple times," but failing to support denial with record citation or to otherwise elaborate as to when, or the manner in which, the records at issue were provided to Defendant].)

In his peer review report, Dr. Wallquist summarized Plaintiff's imaging comparisons and medical records (described above) and found that Plaintiff's medical documentation did not support the conclusion that he was functionally impaired from being able to perform his occupation. (AR 714-16.) More specifically, Dr. Wallquist concluded as follows:

> In summary, based on review of the medical documentation provided pertaining to the diagnosis of low back pain, thoracolumbar scoliosis, spinal stenosis, and lumbar disk disease, there was a lack of significant quantifiable physical examination findings, such as range of motion measurements in degrees, gait analysis, and detailed neurological examination to correlate with the claimant's subjective complaints to support a functional impairment. In addition, the diagnostic studies performed and commented on above revealed no significant interval change compared to previous imaging studies. The peer-to-peer telephonic conference with Mathew Bowman, physical therapist, indicated the claimant was capable of lifting 60-75 pounds occasionally and could safely work in a medium physical demand category eight hours a day. The results of the FCE would be in complicance [*sic*] with the claimant's job description as a maintenance technician specialist I for Federal Express described as a medium to heavy physical demand category.

(AR 716.)

### c.    Clinical Consultant Referral to Dr. Ferdinand Urmaza

On November 3, 2014, Defendant retained Dr. Ferdinand Urmaza, a medical doctor in another country and not licensed to practice in the United States, to conduct a clinical consultant referral of Plaintiff's claim file, which included the medical records report obtained as part of his STD claim and Dr. Wallquist's peer review report. Dr. Urmaza noted that, although Plaintiff's medical records reflected that Plaintiff had a history of scoliosis, there was "no new MRI to determine its progression and severity," and the information about Plaintiff's FCE conveyed by Mr. Bowman established that Plaintiff could perform his occupation. (AR 278.) Moreover, Dr.

14

Urmaza noted that a physician had previously recommended that Plaintiff undergo surgery, but Plaintiff deferred and never underwent surgery. (*Id.*) Dr. Urmaza concluded that the medical documentation then available did not support a finding that Plaintiff was unable to perform the essential functions of his occupation as of July 22, 2014 (the date on which Plaintiff would have been first eligible to receive LTD benefits). (*Id.*)

### d.    Letter to Plaintiff, dated November 21, 2014

In a letter to Plaintiff dated November 21, 2014, Defendant advised Plaintiff that, pursuant to the Plan's definition of "disability," Plaintiff was required to present "significant objective findings" to establish that he was disabled. (AR 671 [letter to Plaintiff, dated 11/21/2014].) Moreover, Defendant noted that, in October 2014, it had requested–but had not received–a Capabilities and Limitations Worksheet ("CLW"), an APS, a Long Term Disability Questionnaire, Plaintiff's FCE report, and updated medical records. (*Id.*) Defendant explained that it "need[s] this information to determine if you meet the definition of disability described above." (*Id.*) Finally, Defendant advised Plaintiff that, "[i]f the information listed above is not received in our office by December 15, 2014, your claim will be reviewed and the determination will be based upon the information in our file." (*Id.*)

### e.    Physician Review by Martin Mendelssohn, M.D.

While some of Defendant's analysts were reviewing Plaintiff's claim for LTD benefits, other of Defendant's analysts were reviewing his appeal from the denial of his claim for STD benefits. As part of its review of Plaintiff's STD benefits appeal, Dr. Martin Mendelssohn, M.D., a board certified orthopedic surgeon, performed an independent peer review of Plaintiff's medical records and documentation to determine whether Plaintiff had a functional impairment

rendering him unable to perform his own occupation beginning in January 2014. (AR 769-72

[Physician Review Report of Dr. Mendelssohn, 12/10/2014].) On December 10, 2014, he

conducted a telephonic peer-to-peer review with Dr. Husovsky. (AR 771.) Dr. Mendelssohn's

review report reflects that, during the call, Dr. Husovsky stated that Plaintiff was unable to work

"because of his pain" related to his scoliosis and spinal stenosis, but Dr. Husovsky could not

"provide any evidence of any functional or neurological deficits" from which Plaintiff suffered.

(*Id.*) Dr. Mendelssohn concluded as follows:

> Based on the available medical records, as well as a teleconference
> with Dr. Husovsky, it is noted the claimant has ongoing low back
> pain, which ha[s] been present for an extended period of time.
> However, comprehensive history and physical examination
> indicating functional or neurological deficit is not provided that
> would substantiate a functional impairment for the time period
> 1/2/14 through 7/30/14.

(*Id.*)

### f.     Initial Denial of Plaintiff's Claim for LTD Benefits

By letter dated December 22, 2014, Defendant advised Plaintiff that it had denied his

claim for LTD benefits for two reasons: (1) it "ha[d] not received previously requested

information necessary to [its] evaluation of [Plaintiff's] eligibility for benefits[,]" and (2) given

that Plaintiff's claim for STD benefits had been denied due to "a lack of objective clinical data to

support a functional impairment," he had not completed the "elimination period" required by the

LTD Plan (i.e., he had not been continuously disabled as of his first date absent from work).

(AR 675.)[15]  More specifically, the letter noted that, in its letter dated November 21, 2014,

---

[15]     Reiterating the terms of the LTD Plan, the letter explained that Plaintiff was
required to "substantiate[]" his alleged disability by "significant objective findings which are
defined as signs which are noted on a test or medical exam and which are considered significant

Defendant had requested that Plaintiff provide updated medical records that were needed for reviewing his LTD claim, but that Plaintiff had not provided any additional records.  (*Id.*) Finally, the denial letter noted that Defendant would "review any additional information [Plaintiff] care[d] to submit," including "a detailed narrative report for the period 1/23/2014 through present outlining the specific physical . . . limitations related to your condition that your doctor has placed on you as far as gainful activity is concerned," as well as "diagnostic studies conducted during the above period, such as test results, X-rays, laboratory data, and clinical findings[.]"  (*Id.*)

### g.    Plaintiff's Appeal of the Denial of LTD Benefits

Plaintiff appealed the decision denying his claim for LTD benefits and stated, in an Appeal Request Form, that spinal stenosis rendered him unable to return to work.  (AR 751 [Appeal Request Form, dated 4/23/2015].)  In the section of the form asking "[w]hat specific aspects of [his] job [he] was unable to perform and why," Plaintiff stated, "I have to move to different positions to find comfort.  Can't stand long can't sit long [*sic*]."  (*Id.*)  On January 9, 2015, Plaintiff advised Aetna personnel that he would provide an FCE "sometime[] this month" and that the "FCE DR" would complete the necessary paperwork and send it to Aetna.  (AR 407.)

In support of his appeal, Plaintiff submitted an APS completed by Dr. Husovsky and a

---

anatomical, physiological or psychological abnormalities which can be observed apart from [your] symptoms."  (AR 675.)  The letter further explained that, under the Plan, an occupational disability "mean[s] the inability . . . because of a medically-determinable physical or functional impairment . . . to perform the essential functions of [your] regular occupation . . . ."  (*Id.*)

CLW, both dated January 26, 2015.[16]  (AR 752-55.)  The APS reflects that Plaintiff has suffered

from "LB Pain" since January 2010, has no ability to work, and is limited to "[l]ifting 10 lbs,

pulling occasionally, occasional carrying 7 lbs, twisting 2 lbs."  (AR 753.)  Moreover, the APS

reflects that Dr. Husovsky prescribed these limitations on Plaintiff's work activities on January

19, 2014, that Plaintiff's estimated date for returning to work was "unknown," and that the

objective findings substantiating Plaintiff's impairments were contained in the "[f]ull FCE &

evaluation done by . . . Westside Physical PT."  (*Id.*)  In the section of the APS titled "Current

Status," Dr. Husovsky noted that Plaintiff's condition had "[s]tabilized," and that, in his opinion,

Plaintiff was not motivated to return to work.  (*Id.*)

 Plaintiff's CLW reflects the following with respect to his limitations: (1) Plaintiff can

"[o]ccasionally"climb, lift, push, pull, reach above his shoulder, carry a maximum of seven

pounds, bend, twist with a maximum of two pounds, hand grasp (both hands), firm hand grasp

(both hands), sit, stand, and walk; (2) Plaintiff can "[n]ever" crawl, kneel, perform repetitive

motion, or stoop; (3) Plaintiff cannot move his head or neck in a "[s]tatic [p]osition," perform

"[f]requent [f]lexing," or perform "[f]requent [r]otation"; and (4) Plaintiff "has to change

positions frequently and take rest periods after prolonged activities."  (AR 754.)  The CLW does

not provide any explanation of the tests or methods used to determine these limitations.[17]  Aside

---

[16]      The APS was completed and signed by Dr. Husovsky.  (AR 752-53.)  The CLW was signed by Dr. Husovsky, as well as a physical therapist (whose name is difficult to decipher).  (AR 754.)

[17]      The Court notes that it appears that the most recent medical record contained in the administrative record (aside from APS and CLWs requested by Defendant) is dated January 22, 2014.  Moreover, the medical records do not appear to discuss any restrictions or limitations with respect to Plaintiff's ability to move his head or neck, or to use his hands for grasping.

from Dr. Husovsky's reference to a "[f]ull FCE & evaluation" in his APS and the limitations set forth in the CLW, the administrative record does not contain an FCE report or any other documentation related to the FCE purportedly completed in January 2015.

### h.    Review by Joseph Braun, M.D., J.D.

As part of Plaintiff's LTD claim appeal, Dr. Joseph Braun, who is board certified in occupational medicine, performed an independent physician review of the medical records and documents in Plaintiff's claim file, including records related to claims for leave filed during the period of 2008 through 2010.  (AR 703-09 [Physician Review Report of Dr. Braun].)  In his report, Dr. Braun noted that Plaintiff's "history of chronic scoliosis" and complaints of back pain dated back to 2008, and that, in October 2009, surgical intervention (a T6-L5 decompression) was recommended, but which Plaintiff deferred.  (AR 706.)  Dr. Braun reviewed Plaintiff's medical records related to his complaints of back pain beginning in October 2013 (which represented a "new problem" relative to Plaintiff's older complaints of back pain), as well as the physician review reports prepared by Dr. Wallquist and Dr. Mendelssohn.[18]  (AR 706-07.)  The "MEDICAL ANALYSIS" section of Dr. Braun's review report states as follows:

> I spoke with Dr. Husovsky on 5/22/15.  He was under the impression that the back problem had been taken care of.  He states that he only takes care of the claimant's medical problems and doesn't evaluate his back at all any more.  He also stated he does not have any comment as to the claimant's current functional abilities.
>
> In summary, reliable physical findings are not seen in the notes of the claimant's attending providers.  Claimant appears to have

---

[18]    The record related to Plaintiff's visit with Dr. Husovsky on October 11, 2013, states that the reason for Plaintiff's visit was "a new problem for chief complaint: LB Pain."  (AR 825.)  It is unclear what made Plaintiff's problem a "new" one relative to his medical history.

> scoliosis which is stable.  Claimant demonstrated in an FCE the
> ability to do his job as described.  No intervening clinical
> information since then shows any change.  Dr. Husovsky in a
> phone discussion also stated that there had been no changes.  He
> felt the back situation had been resolved and did not have any
> further comments as the [*sic*] claimant's functionality.  The most
> recent medication the claimant was taking appears to be an NSAID
> and Cymbalta with no other treatment being seen.  Surgery was
> recommended but the claimant declined.  Impairment is not
> established by this material.

(AR 707-08.)  The report also notes that, during the telephone call with Dr. Braun, Dr. Husovsky

advised Dr. Braun that he had last seen Plaintiff on March 28, 2015, and that, "[a]t that time[,]

there w[ere] no changes."  (AR 708.)  Based upon these considerations, Dr. Braun opined that

Plaintiff

> has no proven functional impairments and has occupational
> capacity for the dates in question.  As was stated in the medical
> analysis above, physical findings and clinical testing to support
> such impairments are not found in the clinical received.  The sole
> exception would be the functional capacity evaluation the claimant
> underwent, which I do not have a copy of.  According to this, the
> claimant demonstrated the ability to lift 60 to 75 pounds
> occasionally and work an 8 hour day at a medium PDL.  In my
> opinion these numbers are only a baseline but I cannot even be
> certain of this as I do not have the report showing validity testing,
> etc.  The claimants [*sic*] treatment has been very conservative
> without any major interventions such as surgeries or injections,
> and the only medicines seen being naproxen, Celebrex and
> Cymbalta, which are not very aggressive in nature.  It appears that
> previous limitations/restrictions proposed by Dr. Husovsky were
> mostly based on the claimant self-reports of pain and function
> rather than on objective and replicable evidence.  My review of the
> clinical received and discussion with claimant's provider Dr.
> Husovsky brings me to the conclusion that the material provided
> does not include physical findings, clinical testing or functional
> measurements which establish any level of impairment.  Therefore
> limitations, which are based on what a claimant can do in the face
> of impairment are not supported.  Also, no restrictions, which are
> based on risk, would apply.  This would include the restriction of
> not working at all.
>
> . . .

> The claimant reports ongoing pain.  A review of the physical
> findings, clinical testing and functional measurements shows that
> the claimant has a stable degenerative condition of the back along
> with scoliosis.  While the claimant may have some pain, evidence
> to support any decrement in functionality as a result of it is not
> found in my review of the clinical received.  Therefore no
> limitations/restrictions attach.  Claimant is capable of functioning.

(AR 708-09.)  Although the January 2015 APS and CLW are listed among the documents

reviewed by Dr. Braun, those records were not expressly discussed in his review report.  (AR

704-05.)

### i.     Denial of Plaintiff's Claim for LTD Benefits Upheld

In a letter dated July 9, 2015, Defendant advised Plaintiff that it was upholding its denial

of his claim for LTD benefits for the following reasons: (1) there was a "lack of medical

evidence to support a functional impairment" precluding him from performing his own

occupation as of his first date he sought disability leave (i.e., January 23, 2014); (2) he was not

found to be continuously disabled from work throughout the 180-day elimination period required

under the LTD Plan's terms; and (3) there was "no clinically supporting evidence to support the

restrictions and limitations previously imposed by Dr. Husovsky."  (AR 697-98.)

### C.     Briefing of Parties' Motions for Summary Judgment

### 1.     Plaintiff's Motion for Summary Judgment

### a.     Plaintiff's Memorandum of Law

Generally, in support of his motion, Plaintiff argues that Defendant's denial of his claims

for benefits under the STD and LTD policies was arbitrary and capricious.  (Dkt. No. 24, Attach.

2 [Plf.'s Memo. of Law].)  More specifically, Plaintiff advances four arguments: (1) he provided

substantial, objective medical evidence of his disabling conditions (namely, degenerative

thoracolumbar scoliosis, foraminal stenosis, and central canal stenosis), and these conditions

have precluded him from performing his duties or those of any other job at his place of

employment; (2) Defendant's own clinical file review, performed by Dr. Martin Mendelssohn,

noted that Plaintiff's treating physician, Dr. Husovsky, found Plaintiff to be disabled

"indefinitely" as of January 23, 2014, due to his "persistent symptoms"; (3) Dr. Mendelssohn's

conclusion that Plaintiff's medical file did not contain a "comprehensive history and physical

examination indication [a] functional or neurological deficit . . . that would substantiate a

functional impairment for the time period . . ." was "insufficient to overturn" Dr. Husovsky's

medical diagnoses; and (4) in reaching its determination, Defendant did not adequately consider

Plaintiff's subjective complaints of pain, "advanced age," "the nature of his disability, and the

fact that he is precluded from earning a living," all of which make him "even more deserving of

disability benefits . . . than he otherwise would be." (*Id.* at 6-14.)[19]

### b.    Defendant's Opposition Memorandum of Law

Generally, in opposition to Plaintiff's motion, Defendant advances nine arguments: (1)

Plaintiff's motion should be denied because his Rule 7.1 Statement does not comply with Rule

7.1(a)(3) of the Court's Local Rules of Practice; (2) in any event, to the extent that Plaintiff's

motion seeks a judgment based on a claim that he was improperly denied STD benefits (to the

extent he asserts one), the motion must be denied because (a) his Amended Complaint–which

superseded his Complaint–does not contain a claim for recovery of such benefits, rendering this

claim waived, and (b) Defendant has not insured FedEx's STD Plan–which is now self-

---

[19]    Plaintiff also argues that Defendant's determination was "rendered after less than a full and fair review," a conclusion that "can be gleaned by [its] baseless conclusion in light of all the compelling of evidence of permanent disability[.]"  (Dkt. No. 24, Attach. 2, at 15.)

funded–since mid-2015; (3) the arbitrary-and-capricious standard of review applies to Plaintiff's claim for the wrongful denial of benefits under the LTD Plan, and Plaintiff does not argue otherwise; (4) Plaintiff's motion for a judgment on this claim must be denied because Defendant's determination that Plaintiff was not "disabled" within the meaning of the LTD Plan was reasonable, in that (a) it was supported by reports prepared by Dr. Ferdinand Urmaza, Dr. Joseph Braun, Dr. James Wallquist, and Dr. Mendelssohn, and Plaintiff raises no argument with respect to the conclusions reached by Drs. Urmaza, Braun, or Wallquist, (b) the results of Plaintiff's January 2014 FCE, communicated by his physical therapist to Dr. Wallquist, did not support a determination that Plaintiff was functionally impaired from performing his own occupation, and (c) Defendant is not required to afford special deference to the opinion of Plaintiff's treating physician; (5) moreover, Defendant conducted a full and fair review of his claim, and Plaintiff has not (a) identified any evidence that was withheld from him, (b) has not established that he was prevented from submitting material relevant to his claim, and (c) has not identified any basis supporting the conclusion that Defendant improperly handled his claim; (6) Defendant appropriately considered Plaintiff's subjective complaints of pain, as evidenced by the reports prepared by Drs. Wallquist, Mendelssohn, and Braun, and properly denied his claim, despite his subjective pain, in light of the lack of objective medical findings supporting a functional impairment; (7) Defendant was not required to consider Plaintiff's vocational qualifications to perform sedentary work, or his "advanced age," in rendering a determination of his claim for benefits, because the Plan uses an "own occupation" test; (8) Plaintiff's treating physician (Dr. Husovsky) did not provide any objective evidence related to Plaintiff's functional or neurological impairments or functional capabilities; and (9) based on all of the foregoing

arguments, Defendant's decision denying Plaintiff benefits under the Plan was not arbitrary and capricious.  (Dkt. No. 29 at 6-19 [Def.'s Opp'n Memo. of Law].)

### 2.    Defendant's Motion for Summary Judgment

#### a.    Defendant's Memorandum of Law

Generally, in support of its motion, Defendant advances two arguments: (1) the LTD Plan at issue grants the administrator discretionary authority to determine a participant's eligibility for benefits, and the arbitrary-and-capricious standard of review therefore applies in this case; and (2) its determination with respect to Plaintiff's LTD benefits claim was substantially supported by the evidence, and was therefore not arbitrary and capricious, because (a) Plaintiff failed to provide "significant objective findings" to support his claim that his back pain and conditions render him functionally impaired from performing his own occupation as required by the LTD Plan, (b) diagnostic imaging results submitted by Plaintiff showed no significant changes from prior images collected approximately four to five years earlier, (c) Plaintiff's treating physician, Dr. Husovsky, declined to comment regarding Plaintiff's functional impairments when contacted by independent peer reviewers, and could not provide evidence of functional or neurological deficits, (d) statements regarding Plaintiff's ability to work, contained in APSs, APRSs, and CLWs, are conclusory and unsupported by clinical evidence or diagnostic testing, (e) an FCE performed by Plaintiff's physical therapist was never provided to Defendant, and the physical therapist's representations about the results of the FCE (as relayed by him to Dr. Wallquist) did not support a finding that Plaintiff was functionally impaired from performing his own occupation, and (f) Plaintiff's lower back pain is "described [in the record] as being mild to moderate," rather than debilitating, and, given the lack of objective support for finding a

24

functional impairment, Defendant's treatment of Plaintiff's subjective complaints did not

constitute an abuse of discretion.  (Dkt. No. 25, Attach. 3, at 13-20 [Def.'s Memo. of Law].)

### b.    Plaintiff's Opposition Memorandum of Law

Generally, in opposition to Defendant's motion, Plaintiff argues that Defendant's

determination denying his claim for LTD benefits was arbitrary and capricious for the following

seven reasons: (1) it is uncontested that Plaintiff's occupation requires him to "routinely lift in

excess of 100 pounds"; (2) it is uncontested that Plaintiff has been diagnosed with degenerative

spinal stenosis, with evidence of various impingements, disk extrusion, curvature of the spine,

and foraminal stenosis; (3) Defendant "ratified and is estopped from denying" that Plaintiff is

"disabled" because it notified him, on Aetna letterhead, that he was deemed "disabled" when he

applied for, and was granted, New York State disability benefits between January 30, 2014, and

July 30, 2014; (4) Plaintiff supplied Defendant with "all records that [it] requested of him," and

those records reflect that he was in "'unbearable' pain while at work" and received "significant

treatment," including spinal injections;[20] (5) Defendant "admits" that Dr. Husovsky concluded

that Plaintiff was "disabled from working"; (6) the findings and conclusions of Dr. Urmaza are

an insufficient basis upon which to grant Defendant summary judgment because Dr. Urmaza is a

physician of "unknown qualifications" who practices in an unidentified country and who, in any

event, conceded that Plaintiff has a history of degenerative "chronic scoliosis"; and (7) based on

each of these arguments, as well as the medical evidence provided to Defendant in support of his

---

[20]    Although medical records refer to a treatment plan including steroid injections in
2009 (AR 811-12 [Progress Note, 1/30/2012]), it is unclear if, and when, Plaintiff actually
received a spinal injection in 2013, 2014, or 2015.  Medical records also reflect that Plaintiff
received an injection in his shoulder in April 2010.  (AR 842.)

claim, Plaintiff has been "continuously disabled" as of the first date of his absence from work

within the meaning of the LTD Plan.  (Dkt. No. 28 at 9-17 [Plf.'s Opp'n Memo. of Law].)

<b>c.     Defendant's Reply Memorandum of Law</b>

Generally, in its reply memorandum of law, Defendant reiterates the arguments advanced

in its memorandum of law and, moreover, argues as follows: (1) Plaintiff failed to properly

respond to Defendant's Rule 7.1 Statement, and the facts asserted therein should thus be deemed

admitted; (2) where (as here) the deferential arbitrary-and-capricious standard of review applies,

a summary judgment motion is merely the conduit by which the administrator's benefits

determination is brought before a district court for review; (3) to the extent that Plaintiff attempts

to introduce evidence not contained in the administrative record (i.e., by way of his affidavit

constituting his Rule 7.1 Response and by arguing that Dr. Urmaza's qualifications and

conclusions should be introduced at a trial), he has not demonstrated good cause for expanding

the administrative record with outside information; and (4) Defendant is not estopped from

denying him benefits under the LTD Plan merely because he qualified for statutory short-term

benefits provided under the New York Workers' Compensation Law (a determination carrying

no *res judicata* effect with respect to his claim for ERISA benefits), and Plaintiff cites no

authority supporting his argument.  (Dkt. No. 30 at 1-8 [Def.'s Reply Memo. of Law].)

## II.     RELEVANT LEGAL STANDARDS

### A.     Legal Standard Governing a Motion for Summary Judgment

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the movant shows that

there is no genuine dispute as to any material fact and that the movant is entitled to a judgment

as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute of fact is "genuine" if "the [record]

26

evidence is such that a reasonable jury could return a verdict for the [non-movant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).[21]  As for the materiality requirement, a dispute of fact is "material" if it "might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

In determining whether a genuine issue of material fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the movant. *Anderson*, 477 U.S. at 255. In addition, "[the movant] bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the . . . [record] which it believes demonstrate[s] the absence of any genuine issue of material fact." *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986).  However, when the movant has met its initial burden, the non-movant must come forward with specific facts showing a genuine issue of material fact for trial.  Fed. R. Civ. P. 56(a),(c),(e).

Implied in the above-stated burden-shifting standard is the fact that, where a non-movant fails to respond to a motion for summary judgment, a district court has no duty to perform an independent review of the record to find proof of a factual dispute.[22]

Of course, when a non-movant fails to respond to a motion for summary judgment, "[t]he fact that there has been no [such] response . . . does not . . . [by itself] mean that the motion is to

---

[21]     As a result, "[c]onclusory allegations, conjecture and speculation . . . are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) [citation omitted].  As the Supreme Court has explained, "[The non-movant] must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).

[22]     *Cusamano v. Sobek*, 604 F. Supp.2d 416, 426 & n.2 (N.D.N.Y. 2009) (Suddaby, J.) (citing cases).

27

be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996). Rather, as indicated above, the Court must assure itself that, based on the undisputed material facts, the law indeed warrants judgment for the movant. *Champion*, 76 F.3d at 486; *Allen v. Comprehensive Analytical Group, Inc.*, 140 F. Supp.2d 229, 232 (N.D.N.Y. 2001) (Scullin, C.J.); N.D.N.Y. L.R. 7.1(b)(3). What the non-movant's failure to respond to the motion does is lighten the movant's burden.

For these reasons, this Court has often enforced Local Rule 7.1(a)(3) by deeming facts set forth in a movant's statement of material facts to be admitted, where (1) those facts are supported by evidence in the record, and (2) the non-movant has willfully failed to properly respond to that statement.[23]

Similarly, in this District, where a non-movant has willfully failed to respond to a movant's properly filed and facially meritorious memorandum of law, the non-movant is deemed to have "consented" to the legal arguments contained in that memorandum of law under Local Rule 7.1(b)(3).[24] Stated another way, when a non-movant fails to oppose a legal argument asserted by a movant, the movant may succeed on the argument by showing that the argument

---

[23]    Among other things, Local Rule 7.1(a)(3) requires that the non-movant file a response to the movant's Statement of Material Facts, which admits or denies each of the movant's factual assertions in matching numbered paragraphs, and supports any denials with a specific citation to the record where the factual issue arises. N.D.N.Y. L. R. 7.1(a)(3).

[24]    *See, e.g.*, *Beers v. GMC*, 97-CV-0482, 1999 U.S. Dist. LEXIS 12285, at *27-31 (N.D.N.Y. March 17, 1999) (McCurn, J.) (deeming plaintiff's failure, in his opposition papers, to oppose several arguments by defendants in their motion for summary judgment as consent by plaintiff to the granting of summary judgment for defendants with regard to the claims that the arguments regarded, under Local Rule 7.1[b][3]; *Devito v. Smithkline Beecham Corp.*, 02-CV-0745, 2004 WL 3691343, at *3 (N.D.N.Y. Nov. 29, 2004) (McCurn, J.) (deeming plaintiff's failure to respond to "aspect" of defendant's motion to exclude expert testimony as "a concession by plaintiff that the court should exclude [the expert's] testimony" on that ground).

possess facial merit, which has appropriately been characterized as a "modest" burden. *See* N.D.N.Y. L.R. 7.1(b)(3) ("Where a properly filed motion is unopposed and the Court determined that the moving party has met its burden to demonstrate entitlement to the relief requested therein . . . ."); *Rusyniak v. Gensini*, 07-CV-0279, 2009 WL 3672105, at *1, n.1 (N.D.N.Y. Oct. 30, 2009) (Suddaby, J.) (collecting cases); *Este-Green v. Astrue*, 09-CV-0722, 2009 WL2473509, at *2 & n.3 (N.D.N.Y. Aug. 7, 2009) (Suddaby, J.) (collecting cases).

**B.      Legal Standard Governing Actions Brought Under ERISA Related to a Denial of Benefits**

"It is appropriate to consider a challenge under ERISA to the denial of disability benefits as a summary judgment motion reviewing the administrative record." *Suarato v. Bldg. Servs. 32BJ Pension Fund*, 554 F. Supp. 2d 399, 414-15 (S.D.N.Y. 2008) (citing *Muller*, 341 F.3d at 124); *see also Gannon v. Aetna Life Ins. Co.*, 05-CV-2160, 2007 WL 2844869, at *6 (S.D.N.Y. Sept. 28, 2007) ("[S]ummary judgment provides an appropriate vehicle whereby the Court can apply substantive ERISA law to the administrative record."); *Chitoiu v. UNUM Provident Corp.*, 05-CV-8119, 2007 WL 1988406, at *3 (S.D.N.Y. July 6, 2007); *Perezaj v. Bldg. Serv. 32B-J Pension Fund*, 04-CV-3768, 2005 WL 1993392, at *4 (E.D.N.Y. Aug. 17, 2005) ("A court evaluating a fund's final decision under the arbitrary and capricious standard should therefore grant summary judgment to the fund where there is no genuine dispute regarding whether the decision was arbitrary and capricious.").

"ERISA does not set out the appropriate standard of review for actions under § 1132(a)(1)(B) challenging benefit eligibility determinations." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 (1989). The Supreme Court has thus held "that a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit

plan gives the [plan] administrator or fiduciary discretionary authority to determine eligibility for

benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co.*, 489 U.S. at 115.

"[W]here the ERISA plan confers upon the plan administrator discretionary authority to

'construe the terms of the plan,' the district court should review a decision by the plan

administrator under an excess of allowable discretion standard." *Frommert v. Conkright*, 535

F.3d 111, 119 (2d Cir. 2008) (citing *Nicols v. Prudential Ins. Co. of Am.*, 406 F.3d 98, 108 [2d

Cir. 2005] [noting that the proper standard when a Plan vests the administrator with discretionary

authority is "abuse of discretion"]).  Under such a standard, an administrator abuses its discretion

only when the administrator's actions are arbitrary and capricious.  *See, e.g., Guglielmi v.

Northwestern Mut. Life Ins. Co.*, 06-CV-3431, 2007 WL 1975480, at *4 (S.D.N.Y. July 6, 2007)

(quoting *Firestone Tire & Rubber Co.*, 489 U.S. at 115).   Since this is a "highly deferential

standard of review, an administrator's decision should only be disturbed if it is without reason,

unsupported by substantial evidence or erroneous as a matter of law, considering the relevant

factors of the decision." *Guglielmi*, 2007 WL 1975480, at *4 (citations and internal quotations

omitted); *accord, e.g., Schussheim v. First Unum Life Ins. Co.*, 80 F. Supp. 3d 360, 374

(E.D.N.Y. 2015).  "Substantial evidence consists of such evidence that a reasonable mind might

accept as adequate to support the conclusion reached by the [administrator and] . . . requires

more than a scintilla but less than a preponderance." *Guglielmi*, 2007 WL 1975480, at *4

(citation and internal quotations omitted).   As a result, "[a]n administrator's decision under this

deferential standard may be upheld even when 'there is evidence in the record . . . that would

have supported a contrary finding.'" *Id.* (quoting *Pulvers v. First UNUM Life Ins. Co.*, 210 F.3d

89, 94 [2d Cir. 2000]).  Furthermore, "[a] district court's review under the arbitrary and

capricious standard is limited to the administrative record."  *Id.* (citation and internal quotation omitted).

III.     **ANALYSIS**

      **A.     Whether Plaintiff Has Asserted a Claim with Respect to Defendant's Denial of STD Benefits**

      After carefully considering the matter, the Court answers this question in the negative for the reasons set forth in Defendant's opposition memorandum.  (Dkt. No. 29 at 7 [Def.'s Opp'n Memo. of Law].)

      To those reasons, the Court would add only that, although Plaintiff argues (in a conclusory manner) that Defendant's "declination of STD and LTD benefits was made in bad faith" because he presented overwhelming evidence that he was "disabled" (Dkt. No. 28 at 8 ¶ 19 [Plf.'s Opp'n Memo. of Law]), he does not otherwise oppose Defendant's argument that Plaintiff "does not seek STD benefits in this action" (Dkt. No. 25, Attach. 3, at 1 [Def.'s Memo. of Law]). As discussed above in Part II.A of this Decision and Order, in this District, when a non-movant fails to oppose a legal argument asserted by a movant, the movant's burden with regard to that argument is lightened, such that, in order to succeed on that argument, the movant need only show that the argument possess facial merit.  The Court finds that Defendant has, at the very least, met its modest threshold burden for the reasons set forth in its memoranda of law.  In any event, Plaintiff's Amended Complaint, which superseded his original Complaint in all respects, does not contain a claim related to the denial of his application for STD benefits.

      Accordingly, the Court concludes that no such claim is properly before the Court.

**B.      Whether the Arbitrary-and-Capricious Standard of Review Applies to Plaintiff's Claim Regarding Defendant's Denial of LTD Benefits**

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Defendant's memorandum of law in chief and in its opposition memorandum of law.  (Dkt. No. 25, Attach. 3, at 13-15 [Def.'s Memo. of Law]; Dkt. No. 29 at 8 [Def.'s Opp'n Memo. of Law].)

The Court would add only that, in his memoranda of law, Plaintiff does not argue to the contrary; rather, Plaintiff appears to concede that the arbitrary-and-capricious standard of review applies.  (Dkt. No. 24, Attach. 2, at 12-15 [Plf's Memo. of Law, arguing that Defendant's denial of benefits was arbitrary and capricious]; Dkt. No. 28 at 11-17 [Plf.'s Opp'n Memo. of Law, arguing that Defendant's denial of benefits was arbitrary and capricious].)   As noted above, in order to succeed on an unopposed argument, a party need only show that its argument has facial merit.  The Court finds that Defendant has, at the very least, met that burden for the reasons set forth in its memoranda of law, as well as in light of the language of the LTD Plan set forth above in Part I.B.3 of this Decision and Order.

**C.      Whether Defendant's Denial of Plaintiff's Claim for LTD Benefits Was Arbitrary and Capricious**

After carefully considering the matter, the Court answers this question in the negative for the reasons set forth in Defendant's memoranda of law.  (Dkt. No. 25, Attach. 3, at 13-20 [Def.'s Memo. of Law]; Dkt. No. 30 at 3-9 [Def.'s Reply Memo. of Law].)  To those reasons, the Court adds the following analysis.

As an initial matter, based upon a careful review of the parties' arguments in their memoranda of law, the Court finds that the crux of the parties' dispute is whether Plaintiff has

provided "significant objective findings" supporting the assertion that he suffers from an occupational disability (i.e., that he is prohibited from performing the "essential functions of his regular occupation" under the terms of the LTD Plan).  (AR 41.)  As set forth above, Plaintiff argues that the administrative record is replete with references to his diagnoses of degenerative scoliosis, spinal stenosis, and canal stenosis, and that these conditions resulted in severe lower back pain and prevented him from being able to perform the duties of a Maintenance Technician Specialist I.  In response, Defendant argues that, although Plaintiff's medical records reflected that he suffered from ongoing lower back pain related to his diagnosed conditions, the administrative record does not contain objective evidence substantiating Plaintiff's alleged functional impairments.

Plaintiff correctly notes, and Defendant does not dispute, that, in addition to his complaints of ongoing lower back pain, the record contains objective evidence of his conditions, including x-ray and MRI examinations from as early as 2008 and 2009.  (AR 812 [Progress Note, dated 1/30/2009, noting the presence of various impingements, bulging disks, curvature of the spine, and foraminal stenosis].)  Plaintiff's point is well taken, and medical records and diagnostic imaging support the conclusion that he suffers from scoliosis and stenosis. Defendant's physician reviewers acknowledged that Plaintiff's medical records contained these diagnoses, as well as Plaintiff's subjective complaints of ongoing lower back pain in relation thereto.  (AR 706-09, 714-16, 770-71.)

However, "[i]t was reasonable for [Defendant] to require objective evidence to support h[is] *alleged physical limitations,*" a proposition that Plaintiff does not dispute.  *Ianniello v. Hartford Life and Accident Ins. Co.*, 10-CV-0370, 2012 WL 314872, at *3 (E.D.N.Y. Feb. 1,

33

2012) (emphasis added).  The Court is sympathetic with Plaintiff's diagnosed spinal conditions; but the Court cannot conclude that, under the circumstances, Defendant's denial of his claim for LTD benefits was arbitrary and capricious based upon its requirement of (and request of Plaintiff for) objective evidence substantiating Plaintiff's physical limitations *caused by* the undisputed diagnoses.  *See, e.g., Hammonds v. Aetna Life Ins. Co.*, 13-CV-0310, 2015 WL 1299515, at *16 (S.D. Ohio Mar. 23, 2015) ("A lack of objective medical evidence upon which to base a treating physician's opinion is sufficient reason for an administrator's choice not to credit that opinion. . . . Aetna did not act arbitrarily and capriciously in relying on the opinions of the independent reviewers that the MRI results did not provide a basis for the severe physical limitations imposed by [plaintiff's treating physicians]."); *Schlenger v. Fiedelity Emp'r Servs. Co., LLC*, 785 F. Supp. 2d 317, 340 (S.D.N.Y. 2011) ("[A] distinction exists between the amount of fatigue or pain an individual experiences, which is completely subjective, and *how much* an individual's degree of pain or fatigue *limits his functional capabilities*, which can be objectively measured.") (quoting *Schnur v. CTC Commc'ns Corp. Grp. Disability Plan*, 05-CV-3297, 2010 WL 1253481, at *14 [S.D.N.Y. Mar. 29, 2010]) (emphasis added).

As noted in the reports prepared by the physician reviewers, Dr. Husovsky's assertions in his APSs and APRSs that Plaintiff is disabled from working, as well as the extensive physical limitations summarily set forth therein, were not supported by reference to any particular test or method by which Dr. Husovsky (or anyone else) reached these conclusions.  (AR 752 [APS, in which Dr. Husovsky checked the box indicating that Plaintiff has "[n]o ability to work" and references a "[f]ull FCE + evaluation" not contained in the record].)  Moreover, the physical limitations noted in the one-page CLW completed in January 2015 were, again, set forth in a

34

summary, checkbox-based form with no accompanying explanation of the methods by which the results were obtained (such as a more complete FCE report). (AR 754.) Notably, Defendant attempted to obtain a copy of the January 2014 FCE report (as well as updated medical records), but was unsuccessful.[25] (AR 671 [letter to Plaintiff, informing him of the "importance of the. . . functional capacity evaluation report . . . and update[d] medical records for claim determination"].) *See generally Brown v. Metro. Life Ins. Co.*, 463 F. Supp. 2d 847, 851 (N.D. Ill. 2006) (noting that, "despite repeated requests from both her own treating physician . . . and MetLife, Brown did not provide [a functional capacity] evaluation, a failure that in turn contributed to MetLife's decision to terminate her benefits").[26] Moreover, the Court notes that (1) aside from these summary APS, APRS, and CLW forms, there are virtually no medical

---

[25]    *See St. Onge v. Unum Life Ins. Co. of Am.*, 559 F. App'x 28, 30 (2d Cir. 2014) (summary order) ("The FCE is a four-hour exam designed to predict a person's capacity for physical exertion. . . . The test results . . . were sufficiently objective and reliable to enter into Unum's ultimate decision."). The Court notes that Plaintiff does not point to any Plan provision requiring Defendant to order its own FCE (or any other specific examination) when considering a claim for benefits.

[26]    In *Miles v. Principal Life Ins. Co.*, the district court held that the defendant-insurer's determination denying the plaintiff's benefits claim was not arbitrary and capricious because (among other things) "it was not unreasonable for [defendant] to require proof of significant impairment beyond [the attending specialist's] diagnosis" of tinnitus, a "condition that cannot be measured objectively." 831 F. Supp. 2d 767, 777-78 (S.D.N.Y. 2011). On appeal, the Second Circuit reversed, explaining that "[a] claimant bears the burden of proving that a disability is covered, but plan administrators may not impose unreasonable requests for objective evidence." *Miles v. Principal Life Ins. Co.*, 720 F.3d 472, 488 (2d Cir. 2013). The Second Circuit reasoned that, because "the record suggests that there is no objective test to prove the presence of tinnitus[, i]t was unreasonable for [defendant] to request objective evidence of impairment when it had not identified any such test that exists." *Miles*, 720 F.3d at 488. In this case, Plaintiff's conditions and the functional impairments referenced in the record (including, for example, postural limitations and the ability to lift objects) are clearly capable of objective measurement. Accordingly, the Court finds that Defendant's request for evidence of the degree of Plaintiff's functional impairments (including, for example, the FCE report) was not unreasonable.

records in the administrative record from February 2014 and beyond, and (2) physician reports

comparing diagnostic imaging of Plaintiff's back reflect that, although Plaintiff had experienced

degenerative changes, Plaintiff had experienced no significant interval changes between

examinations in 2008-2009 and examinations in late 2013 (a period of time during much or all of

which Plaintiff was working).  (AR 719-26.)  In light of this combination of considerations, and

under the circumstances of this case, the Court concludes that Defendant's decision not to credit

the physical limitations summarily offered by Plaintiff's treating providers was not arbitrary and

capricious.[27]  *See generally Kruk v. Metro. Life Ins. Co., Inc.*, 567 F. App'x 17, 20 (2d Cir. 2014)

(summary order) ("In deciding whether a plan administrator's discretionary decision is supported

by substantial evidence, a reviewing court cannot substitute its own judgment for the insurer as if

it were considering the issue of eligibility anew.")

    For these reasons, as well as those set forth in Defendant's memoranda of law, the Court

---

[27]    As noted above, as part of his physician review, Dr. Wallquist spoke to Mr. Bowman (the physical therapist who completed the early 2014 FCE) by telephone.  (AR 716.) Mr. Bowman told Dr. Wallquist that Plaintiff "demonstrated the ability to lift 60-70 pounds occasionally without pain" and that Plaintiff "could safely engage in a medium physical demand category for an eight hour day, lifting up to 25 to 50 pounds."  (AR 716.)  Dr. Wallquist's review report states that "[t]he results of the FCE would be in compliance with [Plaintiff's] job description as a maintenance technician specialist I . . . described as a medium to heavy physical demand category."  (*Id.*)  This conclusion appears dubious because Plaintiff's job description requires him to lift "[u]p to" 50 pounds, 100 pounds, and over 100 pounds 33 percent of the time. (AR 865.)  However, the Court does not find that remand is warranted by this possibly errant statement.  Dr. Wallquist noted that he did not have a copy of the FCE report, and cited the "lack of significant quantifiable physical examination findings, such as range of motion measurements in degrees, gait analysis, and detailed neurological examination" in support of his conclusion that Plaintiff's records did not establish a functional impairment.  (AR 716.)  Moreover, Dr. Braun noted in his physician review that, "[i]n [his] opinion these numbers [articulated by Mr. Bowman] are only a baseline but I cannot even be certain of this as I do not have the report showing validity testing, etc."  (AR 708.)  In sum, it does not appear that the brief opinion conveyed by Mr. Bowman over the phone to Dr. Wallquist–again, in the absence of a full FCE report–was a significant basis for Defendant's denial of Plaintiff's LTD claim.

concludes that Defendant's denial of Plaintiff's LTD benefits claim was not arbitrary or capricious, and was supported by substantial evidence. *See Hobson v. Metro. Life Ins. Co.*, 574 F.3d 75, 89 (2d Cir. 2009) ("[T]he question for th[e] court is not whether [Defendant] made the 'correct' decision [but] whether [it] had a reasonable basis for the decision that it made.") (internal quotation marks omitted); *Wojciechowski v. Metro. Life Ins. Co.*, 1 F. App'x 77, 79 (2d Cir. 2001) (summary order) ("[O]n a motion for summary judgment, the issue is not . . . whether an administrator was presented with conflicting evidence on matters affecting eligibility for benefits. Rather the issue is whether the administrator's decision resolving that conflict was arbitrary and capricious, *i.e.,* whether there is a material issue of fact in dispute regarding the factors considered by the administrator, and whether as a matter of law his or her decision based on those factors constitutes a clear error of judgment.").[28] Accordingly, Plaintiff's motion for judgment on the administrative record is denied, and Defendant's motion for summary judgment is granted.[29]

---

[28]    With respect to Plaintiff's argument that Defendant's determination was "rendered after less than a full and fair review" (Dkt. No. 24, Attach. 2, at 15), the Court notes that Plaintiff does not argue that Defendant (1) failed to consider any particular piece of evidence (or that it considered evidence that it should not have), (2) withheld any evidence from him, (3) failed to follow any particular policy or procedure with respect to its review of his claim, (4) did not adequately notify him of any shortcomings in the documentation he provided in support of his claim, or (5) did not provide him a reasonable opportunity to provide additional documentation in support of his claim. *See Juliano v. Health Maint. Org. of New Jersey, Inc.*, 221 F.3d 279, 287 (2d Cir. 2000) ("The purpose of [the 'full and fair review'] requirement is to provide claimants with enough information to prepare adequately for further administrative review or an appeal to the federal courts.") (internal quotation marks omitted). The Court therefore finds Plaintiff's argument to be lacking in merit.

[29]    In reaching this conclusion, the Court is mindful that "a plan under which an administrator both evaluates and pays benefits claims creates the kind of conflict of interest that courts must take into account and weigh as a factor in determining whether there was an abuse of discretion[.]" *McCauley v. First Unum Life Ins. Co.*, 551 F.3d 126, 133 (2d Cir. 2008) (citing

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the administrative record (Dkt. No. 24) is <u>**DENIED**</u>; and it is further

**ORDERED** that Defendant's motion for summary judgment (Dkt. No. 25) is <u>**GRANTED**</u>; and it is further

**ORDERED** that Plaintiff's Amended Complaint (Dkt. No. 6) is <u>**DISMISSED**</u> in its entirety.

Dated: July 14, 2017
      Syracuse, NY

                                   Hon. Glenn T. Suddaby
                                   Chief U.S. District Judge

---

*Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 112 [2008]).  In this case, although Defendant was the claims-paying administrator of the LTD Plan, Plaintiff does not argue that the denial of his claim for LTD benefits was the result of a conflict of interest on Defendant's part, and the administrative record does not suggest that it was the result of such a conflict of interest.